**Gerald WHEELER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 09–98–048 CR.

Court of Appeals of Texas, Beaumont.

Submitted Aug. 19, 1998.

Decided Aug. 26, 1998.

Ronnie J. Cohee, Beaumont, for appellant.

Tom Maness, Criminal District Attorney, Rodney D. Conerly, Assistant Criminal District Attorney, Beaumont, for state.

Before WALKER, C.J., and BURGESS, and STOVER, JJ.

## OPINION

STOVER, Justice.

A jury convicted appellant Gerald Wheeler of the offense of retaliation. The trial court sentenced him to six years in the Texas Department of Criminal Justice—Institutional Division.

■ In two points of error, appellant challenges the legal and factual sufficiency of the evidence. Sufficiency of the evidence is measured by the elements of the offense as defined by the hypothetically correct jury charge for the case, which accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997).

■ In reviewing a legal sufficiency point, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). In determining the factual sufficiency of the evidence, we review all of the evidence without the prism of "in the light most favorable to the prosecution," and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Defense evidence and alternate reasonable hypotheses may be considered. *Stone v. State*, 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet. ref'd, untimely filed).

■ The jury is the exclusive judge of the facts proved, the credibility of the witnesses, and the weight to be given to the testimony. TEX.CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979). The jury may believe or disbelieve all or any part of a witness's testimony, even though the witness's testimony has been contradicted. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986). Reconciliation of conflicts in the evidence is

within the exclusive province of the jury. *Jones v. State,* 944 S.W.2d 642, 647 (Tex. Crim.App.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997).

In point of error one, Wheeler contends the evidence is legally insufficient to support his conviction for retaliation. Point of error two raises factual insufficiency of the evidence. The pertinent portion of the retaliation statute is set out below:

## ■ § 36.06. Obstruction or Retaliation

(a) A person commits an offense if he intentionally or knowingly harms or threatens to harm another by an unlawful act:

(1) in retaliation for or on account of the service of another as a public servant, witness, prospective witness, informant, or a person who has reported or who the actor knows intends to report the occurrence of a crime;

. . . .

(c) An offense under this section is a felony of the third degree.

TEX. PEN.CODE ANN. § 36.06 (Vernon 1994).[1] A central purpose of § 36.06 is to encourage a certain class of citizens to perform vital public duties without fear of retribution. *In re M.M.R.,* 932 S.W.2d 112, 115 (Tex.App.— El Paso 1996, no writ). Consistent with this purpose, the statute specifically requires the harm or threatened harm be in retaliation for or on account of the service of another as a public servant, witness, informant, or reporter of a crime. *Id.* In the instant case, the classification at issue is reporter of a crime.

On appeal, Wheeler claims the State failed to "prove an essential element of the offense of retaliation" by failing to prove Wheeler was threatening the complainant in retaliation for her reporting of a crime. We disagree.

Mary Savage, the complainant, had known Wheeler since May 1995; they had lived together for a few months until she broke off the relationship with him in the summer of 1995. After she began receiving phone calls and unwanted visits from Wheeler in early February 1996, she called the police. On February 9, 1996, Officer Shawn Henry responded to Ms. Savage's call from her home. The officer issued a trespass warning to Wheeler on that date.

Appellant continued to call the complainant and to come uninvited to her house. On February 26, she again called the police. Responding to her call, Officer Terry Chance arrived at her home and found Wheeler standing on her porch. After obtaining a non-consent signature and statement from Ms. Savage, Officer Chance testified he arrested Wheeler for trespassing. On April 6, Wheeler was back at the Savage home again. Terrified, Ms. Savage called 9–1–1. Brad Lapeyrolerie, the first officer on the scene, found Wheeler beating on her front door. Already informed of a trespass warning against Wheeler, Officer Lapeyrolerie arrested him. According to the officer, appellant began yelling at him and at the complainant and continued doing so even after he was placed in the police car. According to the police, Ms. Savage "looked frightened. . . . She had been crying a little bit and just kind of shaking. And she said that Mr. Wheeler had threatened to burn her house down with her kids inside."

Ms. Savage testified Wheeler had made repeated threats from February 9 through April 1996. In addition to threatening to burn her house down with the children inside, he also told her he would shoot her in the back. Even after the arrest on April 6, she continued to receive calls from Wheeler.

On June 3, 1996, the date of the retaliation offense, Wheeler called Savage from a club called the Neutral Zone. Savage testified she thought he was still in jail. Although she hung up on him, he called right back and informed her he was not in jail. Again, she was terrified. He told her "I am coming to kill you." Even after the police arrived at her home, arrested Wheeler, and put him in the patrol car, Savage testified he was "cussing and swearing and kicking the inside of the police car door." In the presence of the officers, he told her he would kill her. Ac-

---

1. Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3661 (amend-ed 1997) (current version at TEX. PEN. CODE ANN. § 36.06 (Vernon 1994 & Supp.1998)).

cording to Ms. Savage, she was afraid of being seriously hurt by Wheeler.

Officer Gerald Bush, who responded to the June 3 call, testified he saw Wheeler "walking on her property just outside the fence." As he exited his patrol car, Bush heard Wheeler state, "I am going to kill you, bitch." After Bush arrested him, Wheeler continued to make threats toward Ms. Savage and stated that when he (Wheeler) got back he would kill her. Bush also testified as to Wheeler's statements in the police car:

> Once he was inside my patrol vehicle on the way to the jail, he told me that when he got out he was going to kill her; if he couldn't have her, no one else could; and he would kill her for having put him in jail.

Wheeler's threats were made on the same day (June 3) he was released from jail after having just completed 120 days (with credit for some days) for the April 6 offense at Savage's home.

Wheeler testified in his own defense. His account of the events contradicts the accounts of Ms. Savage and Officer Bush. Wheeler claimed that if he had ever struck Savage in the past, it was only in self-defense. Although he admitted he called her on June 3, he denied he ever intended to go to her house. He testified he was going to a man's house somewhere "between Gulfway and Proctor" to ask about some work, and Savage's house was in the direction he was going. He further claimed he was on a public walkway and "had no intentions of going to that residence. I am not stupid." He agreed he was "somewhat upset" and a "little belligerent." Wheeler also denied he ever told the complainant he was going to kill her. "But I can assure you that I did not say I would kill anybody. I hate calling that officer a 'liar,' but he is badly mistaken." Wheeler further denied he had ever considered harming her because she had turned him in to the authorities.

In his brief, appellant contends that because his threats against Ms. Savage had been ongoing before the trespassing incidents in February, April, and June 1996, the threats could not have been made in retaliation for Ms. Savage's having reported a crime (i.e., the trespassing). According to appellant, the "crime" occurred after some of the threats had already been made. As detailed above, the evidence shows Wheeler specifically stated to Officer Bush on June 3 he (Wheeler) would kill her for having put him in jail. In the context of the evidence, the jury could have reasonably believed Wheeler's reference was to Ms. Savage's previous complaints to the police concerning him and the jail time resulting from those complaints.

■ In viewing the evidence in the light most favorable to the prosecution, a jury could have found all the elements of the offense beyond a reasonable doubt. Ms. Savage and Officer Bush both testified Wheeler made specific threats to kill her on June 3. Officer Bush further testified Wheeler said he would kill Savage for having put him in jail. With evidence before them that Savage had already made complaints against Wheeler, that he had been arrested on those complaints, that he had spent time in jail as a result of them, and that he had said he would kill her because she put him in jail, the jury had sufficient evidence before it to find all the elements of the offense, including that of threatening to harm another for having reported a crime. Sufficient evidence concerning the retributory element was present. *Angelo v. State*, No. 03–97–00750 CR, 1998 WL 476560 (Tex.App.—Austin Aug.17, 1998, no pet. h.); *Stafford v. State*, 948 S.W.2d 921, 923–24 (Tex.App.—Texarkana 1997, pet. ref'd); *Davis v. State*, 890 S.W.2d 489, 491 (Tex.App.—Eastland 1994, no pet.). The evidence, as detailed above, is also factually sufficient. Viewed without the prism of "in the light most favorable to the prosecution," the verdict is not so contrary to the overwhelming evidence that it is clearly wrong and unjust. Resolving the conflicting testimony, the jury believed Mary Savage and the law enforcement officers rather than Wheeler. The evidence is both legally and factually sufficient to support the conviction. Points of error one and two are overruled.

AFFIRMED.